IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ALYSON J. KIRLEIS,           )
    Plaintiff              )
                             )
v.                           )   Civil Action No. 06-1495
                             )
DICKIE, McCAMEY & CHICOLTE,PC)
    Defendant.             )

MEMORANDUM ORDER

Gary L. Lancaster,
District Judge.                           July 23, 2007

    This is an action in employment discrimination. Plaintiff, Alyson J. Kirleis, alleges that her current employer, defendant Dickie, McCamey & Chicolte, PC, discriminated and retaliated against her because of her sex, and subjected her to a hostile work environment in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §2000e, et seq., and the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. §951, et seq. Plaintiff also alleges that defendant paid her less than similarly situated males in violation of the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §201, et seq. Plaintiff seeks compensatory damages, punitive damages and injunctive relief.

    Defendant has filed a motion to dismiss for lack of subject matter jurisdiction. In the alternative, defendant argues that should the court decide it has jurisdiction, it should compel the parties to arbitrate these claims.

For the reasons set forth below, defendant's motion will be denied.

I.   BACKGROUND

Plaintiff is an attorney who has been working for defendant, a law firm, since 1988. Plaintiff was a summer law clerk during the summer of 1987 and an associate attorney from 1988 to 1997. Effective 1998, she was made a Class B shareholder and on 2001, she became a Class A shareholder.

Plaintiff filed charges of sex discrimination, hostile work environment and retaliation with the Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Relations Commission ("PHRC") on October 19, 2006. Plaintiff then filed suit on December 18, 2006 alleging that the method of establishing her annual compensation was not applied to similarly situated male attorneys who were performing the same, or less work, than plaintiff. Plaintiff further alleges that defendant has a separate and lower employment track for female attorneys who have taken maternity leave and/or have children. Plaintiff also contends that defendant has a pattern and practice of discriminating against women because of their sex in the terms and conditions of their employment, including paying lower wages to women, assigning women to lower quality cases, and/or assigning women to roles secondary to male attorneys on cases.

Plaintiff also alleges that defendant maintains a hostile work environment towards women.

Defendant disputes plaintiff's allegations.

II.  STANDARD OF REVIEW

When a court considers a motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), it must first determine whether the defendant is making a facial or factual jurisdictional attack. In a facial jurisdictional challenge, where the defendant asserts that the allegations of the complaint are insufficient to establish jurisdiction, the court must consider all reasonable inferences in favor of the non-moving party. Mortensen v. First Federal Savings and Loan Ass'n, 549 F.2d 884, 891 (3d. Cir. 1977). In a factual jurisdictional attack, where the defendant argues that the court lacks jurisdiction based on evidence outside the pleadings, the standard of review is very different. "Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction -- its very power to hear the case -- there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." Mortensen, 549 F.2d at 891. Thus, when presented with a factual 12(b)(1) motion, the court may consider evidence outside the pleadings, id., and need only accept the plaintiff's uncontroverted allegations as true. Cedars-Sinai Med. Ctr. v.

Watkins, 11 F.3d 1573, 1583 (Fed. Cir. 1993)(citing Gibbs v. Buck, 307 U.S. 66, 72 (1939) and 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure §§ 1350, 1363, at 219-20, 457 (2d ed. 1990)).

The parties agree that this is a factual attack on the court's jurisdiction. Plaintiff has the burden of persuading the court it has jurisdiction. Gould Electronics, Inc. v. United States, 220 F.3d 169, 178 (3d Cir. 2000). Of course, the standard for surviving a Rule 12(b)(1) motion is lower than for a summary judgment motion under Rule 12(b)(6). "A claim may be dismissed under 12(b)(1) only if it clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or is wholly insubstantial." Id. (internal citations omitted.)

III.   Motion to Dismiss

Defendant has moved to dismiss the complaint on the ground that plaintiff is not an employee under the applicable statutes, and therefore, this Court does not have jurisdiction to hear plaintiff's claims.

Plaintiff alleges that despite her title of shareholder, she is defendant's employee and is covered under the applicable statutes.

Plaintiff has brought her claims under Title VII, FLSA and PHRA. In order for plaintiff to state a claim under these statutes, she must be an "employee." See 42 U.S.C. § 2000e(f); 29

4

U.S.C. § 203(e); 43 P.S. § 954(b). Therefore, in order for the court to have jurisdiction, we must first determine whether plaintiff is an employee or an employer. See EEOC v. Sidley Austin Brown & Wood, 315 F.3d 696, 698 (7th Cir. 2002).

Because this is a factual challenge to jurisdiction, we may consider information beyond the pleadings. Gould Electronics, Inc. v. United States, 220 F.3d 169, 177 (3d Cir. 2000). Defendant has submitted a number of exhibits and affidavits in support of its motion to dismiss. We have also considered plaintiff's exhibits and affidavits, as well as defendant's reply brief. Pursuant to the guidance of the Court of Appeals for the Third Circuit in Gould, we will determine the jurisdictional challenge by weighing the evidence presented.

In the leading Supreme Court case addressing the employee/employer distinction, Clackamas Gastroenterology Associates, P.C. v. Wells, the Court held that a person's title is not enough to determine whether they are an employer or an employee of an entity for purposes of employment discrimination statutes. 538 U.S. 440, 450 (2003). The Court set forth factors that a court should evaluate to determine the plaintiff's status. Id. at 449-450. As such, we will evaluate the following factors:

1) Whether the organization can hire and fire plaintiff, or set rules and regulations of plaintiff's work;

2) Whether and to what extent does the organization supervise plaintiff's work;

5

3)  Whether plaintiff reports to someone higher in the organization;

4)  Whether and to what extent is plaintiff able to influence the organization;

5)  Whether the parties intended plaintiff to be an employee as expressed in written agreements or contracts; and

6)  Whether plaintiff shares in profits, losses, and liabilities of organization.

We note that a person's title is not dispositive in this matter, but the court will look at an individual's overall control of the entity. See Clackamas, 538 U.S. 440.

1. Can defendant hire and fire plaintiff, or set rules and regulations for plaintiff's work?

Defendant initially hired plaintiff as an associate. However, defendant contends that plaintiff became an employer once she was elected as a shareholder. According to the By-laws provided by defendant, plaintiff, as a shareholder, can only be terminated by an official vote of three-fourths (3/4) of the shareholders. Plaintiff can speak and vote on the question of her own ouster, which is something associates are not allowed to do. Plaintiff is allowed to delegate work on any of her client's cases and can supervise attorneys or paralegals that she chooses to delegate to. Further, plaintiff can, and does, set her own hours as dictated by her case demands.

Plaintiff, however, claims that decisions regarding promotions, demotions and terminations of attorneys who are

shareholders are made by a vote of all Class A shareholders only in theory. Plaintiff contends that in reality, defendant's Executive Committee has the real control over terminations by virtue of its power with regards to compensation and work assignment matters. Specifically, plaintiff alleges that when the Executive Committee wishes to terminate a shareholder attorney, they reduce the amount of work given to the attorney, resulting in reduced billed hours and profitability, which in turn results in lower compensation. The Executive Committee engages in this course of action to force an attorney to leave. The Executive Committee further controls plaintiff's work by imposing specific regulations, such as prohibiting plaintiff from speaking to people outside the firm, controlling the minimum and maximum number of hours that she is permitted to work, not allowing her to set the hourly rate charged to clients for her work, requiring that new clients be approved by the firm's Rate Committee, and by not allowing her to represent clients without prior approval. Plaintiff also cannot hire or fire attorneys or support staff. Finally, plaintiff does not have the authority to authorize overtime compensation for her own secretary.

Although defendant's arguments seem compelling, they do not address plaintiff's contention that the Executive Committee can force a shareholder from his or her position by controlling work assignments and compensation. We do agree with defendant that

rules governing firm members, such as requiring approval of all new clients, does not prove that plaintiff is an employee, because these rules apply to all firm members, including members of the Executive Committee. Nonetheless, because defendant did not address plaintiff's argument that the Executive Committee has the power to force out shareholders by controlling their work assignments and compensation, we will credit plaintiff's contentions. This factor therefore weighs in favor of finding that plaintiff is an employee.

2. <u>Does defendant supervise plaintiff's work, and if so, to what extent?</u>

Defendant contends that plaintiff's work is not supervised and any decisions regarding her cases are left to her professional judgment. Defendant concedes that plaintiff is supervised in her work with one major client, but contends that this is because this entity is not her client. If plaintiff brought in her own clients, she would not be supervised in her cases and would be free to delegate work.

Plaintiff contends that she is closely supervised in her job performance by members of the Executive Committee who assign her work. The majority of plaintiff's work is in fact for one major client, who is the main client of defendant's malpractice group. All work on those cases is directed by members of the Executive Committee. On these cases, plaintiff receives detailed

memoranda setting forth guidelines and rules for how to handle every aspect of each case.

We find that based on the evidence presented, defendant does supervise plaintiff's work to a great degree. The fact that plaintiff works mainly for the major client of her practice group, does not negate the fact that her work is supervised. Based on defendant's argument, it seems that if plaintiff brought in her own clients, she would have greater freedom in her work. The fact remains, however, that the close supervision weighs in favor of finding that plaintiff is an employee of defendant.

3. <u>Does plaintiff report to someone higher or act independently?</u>

Defendant contends that plaintiff does not report to someone higher in the firm, but that as a shareholder she is allowed to manage her own cases according to her professional judgment. While plaintiff must often follow certain firm rules, these rules apply to every member of the firm. According to defendant, the reason that certain matters are delegated to the Executive Committee is that shareholders cede some of their independence for the common good of the firm. However, as a shareholder, plaintiff could be nominated and elected to the Executive Committee and have further involvement in firm management.

Plaintiff contends that she does not act independently and reports to the Executive Committee. In addition to reporting to

members of the Executive Committee with regard with her work, she must seek approval before she is reimbursed and has no authority to sign checks, unlike members of the Executive Committee.

The court finds that this factor weighs in favor of finding plaintiff as an employee. Plaintiff has presented evidence showing that Executive Committee members have power that she does not have. As we have discussed above, her work is controlled by members of the Executive Committee. There is simply no evidence that plaintiff acts independently at the organization.

4. <u>Is plaintiff able to influence the organization, and if so, to what extent?</u>

Defendant states that plaintiff is able to attend, speak and vote at board meetings, as well as at the annual shareholders meeting. Plaintiff has exercised these rights and voted on several important matters, such as voting for and against future shareholders, and voting to elect members of the Executive Committee. Further, plaintiff is eligible to become a member of the Executive Committee if elected by her peers.

Plaintiff, however, contends that she has no role in making decisions on behalf of defendant and has no meaningful input or influence over the operation of the firm. Plaintiff contends that the role of shareholders at meetings is to "rubber stamp" decisions made by the Executive Committee. For example, decisions to merge with other firms have been presented to the shareholders after they had already been in place, and in some cases, after

10

offices had already opened. In spite of what is set forth in the By-Laws, it is plaintiff's experience that shareholders are not allowed to attend Executive Committee meetings. As to compensation, the Executive Committee sets the compensation and shareholders have no information regarding compensation matters.

The Court finds that as a voting shareholder plaintiff has some ability to influence the organization. The title, however, is not the end of the inquiry. Defendant has not addressed plaintiff's contentions that important matters have been presented for a vote to the shareholders after the transactions were completed. We also find it noteworthy that shareholders who are not members of the Executive Committee do not know how compensation is set. Because unequal pay is one of plaintiff's main complaints, we cannot say that she has the ability to influence the organization in a meaningful way. As such, this factor weighs heavily in favor of finding that plaintiff is an employee.

5. <u>Did the parties intend for plaintiff to be an employee as expressed in written agreements or contracts?</u>

Defendant claims that it always intended to make shareholders employers of the firm. Defendant points to all the benefits that shareholders receive under the By-Laws as an indication of defendant's intent to make shareholders employers.

11

Plaintiff, however, contends that she has always believed she was an employee of defendant and that she never even received a copy of the By-Laws prior to this litigation.

Clearly, the weighing of this factor is complicated by the fact that the only "contract" available for review is the By-Laws that plaintiff never received. As discussed below, defendant does not contend that it ever gave plaintiff a copy of the By-Laws. Because the parties have essentially presented their subjective belief that plaintiff is, or is not, an employer, this factor does not weigh in favor of either side.

### 6. Does plaintiff share in profits, losses, and liabilities of the organization?

Defendant asserts that every shareholder is required to make a capital contribution of $7,500 to the firm. According to defendant, every year, the shareholders divide the net profits based on the percentage share set each January. Shareholder's salaries may, and do, go up or down on any given year based on the firm's profits. A creditor could also attach plaintiff's capital contribution of $7,500 if defendant does not have the assets to pay for the obligation.

Plaintiff concedes that every shareholder is required to contribute $7,500 to the firm, but contends that shareholders never know what is their ownership percentage in the firm. The salaries of every employee, including shareholders, are secretly set by the Executive Committee. According to plaintiff, the

12

Executive Committee can set shareholder salaries and then award secret bonuses to a number of shareholders. Afterwards, they can attribute a percentage of the total salary as the profit-sharing for that year, thereby obliterating any true profit-sharing. Plaintiff further contends that the shareholder contribution is nominal and is meant to create the impression of an ownership stake in the firm. Plaintiff notes that the contribution bears no relation to defendant's profits, pointing out that although billing has increased from $30 million to $53 million in the past five years, the nominal contribution of $7,500 remains the same.

As discussed above, the secrecy in which the Executive Committee sets all salaries and bonuses and decides the profit-sharing, shows that this small group of people has a great deal of control that plaintiff does not possess. Perhaps discovery will show that the Executive Committee follows a very clear, straightforward compensation process, with no bonus-manipulation of the profit-sharing system. However, because defendant does not address how these salaries are set, based on the evidence presented, the Court finds that this factor weighs heavily in favor of plaintiff.

As the Supreme Court has noted, "[t]oday there are partnerships that include hundreds of members, some of whom may well qualify as 'employees' because control is concentrated in a small number of managing partners." Clackamas at 447. Plaintiff

has presented evidence that defendant has 63 shareholders but that control is in fact concentrated on the small number of members of the Executive Committee. Therefore, we hold that plaintiff is an employee covered by the applicable statutes. We note that although we have weighed the evidence presented, the standard of proof at this point is lower than the standard of proof required for summary judgment. Therefore, we deny defendant's motion to dismiss without prejudice to defendant's right to raise this issue after discovery, if appropriate.

IV.   Arbitration

"Arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which [s]he has not agreed so to submit." AT & T Technologies, Inc. v. Communications Workers of America, 475 U.S. 643, 648 (1986) (quoting United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582 (1960)). Accordingly, "'whether or not [a party is] bound to arbitrate, as well as what issues it must arbitrate, is a matter to be determined by the Court on the basis of the contract entered into by the parties.'" Id. at 649 (quoting John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543 547 (1964)).

The court, "when considering a motion to compel arbitration which is opposed on the ground that no agreement to arbitrate had been made between the parties, should give to the opposing party the benefit of all reasonable doubts and inferences that may

arise." Par-Knit Mills, Inc. v. Stockbridge Fabrics Co., 636 F.2d 51, 54 (3d Cir. 1980). However, "federal law presumptively favors the enforcement of arbitration agreements." Alexander v. Anthony Int'l, L.P., 341 F.3d 256, 263 (3d Cir. 2003)(quoting Harris v. Green Tree Financial Corp., 183 F.3d 173,178 (3d Cir. 1998)).

The parties agree that the court must look at Pennsylvania law to determine whether an agreement to arbitrate was made. It is well settled in Pennsylvania that where a party to a civil action seeks to compel arbitration, we must employ a two-part test to determine if arbitration is required. Keystone Technology Group, Inc. v. Kerr Group, Inc., 824 A.2d 1223, 1227 (Pa. Super. 2003)(internal citations omitted). First, we must determine whether a valid agreement to arbitrate exists. Id. Second, if we determine that such an agreement does exist, we must determine if the dispute involved is within the scope of the arbitration provision. Id. The scope of the arbitration is determined by the intention of the parties as ascertained in accordance with the rules governing contracts generally. Id. There must be a meeting of the minds in order for there to be a valid contract to arbitrate. See Quiles v. Financial Exchange Co., 879 A.2d 281, 285 (Pa. Super. 2005).

Plaintiff contends that she never agreed to arbitrate any claims against defendant. Plaintiff has filed an affidavit stating, among other things, the following:

>    15. I was never provided with a copy of the By-Laws of defendant DMC at the time that I was made a Class B shareholder or at anytime thereafter. In fact, I only saw the documents which Mr. Wiley purports to be DMC's By-Laws for the first time when I received Mr. Wiley's Affidavit in connection with this case, approximately 9 years after being made a Class B shareholder-employee and 19 years after commencing the practice of law with the firm.
>
>    16. I was never informed of the presence of the arbitration provision in the By-Laws which DMC is now seeking to enforce against me.
>
>    17. I never signed any agreement or document which refers to or incorporates the arbitration provision in the By-Laws.
>
>    18. I never agreed to arbitrate my claims against DMC.

Defendant contends that when plaintiff became a shareholder, she agreed to arbitrate all her claims against defendant. Defendant points to Article IX: Section 9.01 of the By-Laws, which states:

> (a) GENERAL RULE: Any dispute arising under these By-Laws including disputes related to the right to indemnification, contribution or advancement of expenses as provided under these By-Laws, shall be decided only by arbitration in Pittsburgh, Pennsylvania, in accordance with the commercial arbitration rules of the American Arbitration Association, before a panel of three arbitrators...
>
> (b) EFFECT: Any award entered by the arbitrators shall be final, binding and nonappealable and judgment may be entered thereon any party in accordance with applicable law in any court of competent jurisdiction...This arbitration shall be specifically enforceable.

Defendant contends that plaintiff exercised her rights as a shareholder under the By-Laws, and by exercising her rights, she accepted the terms of the By-Laws. Defendant further contends

that plaintiff should have known that the firm had By-Laws, and that she could have asked for a copy of the By-Laws and reviewed them, but chose not to do so. Therefore, according to defendant, plaintiff accepted to be bound by the By-Laws, including the arbitration provision. We disagree.

In order for there to be an agreement to arbitrate these claims, there must have been a meeting of the minds. Plaintiff provided a sworn affidavit stating that she never received a copy of the By-Laws. Defendant does not contend that it provided plaintiff with a copy of the By-Laws, or that it otherwise informed plaintiff that there was an arbitration clause in the By-Laws. Defendant's argument boils down to its contention that plaintiff must have known that By-Laws existed, that she should have asked for a copy, and that by exercising her rights as a shareholder, she accepted the arbitration clause of the By-Laws.

An argument that plaintiff "must have known" or "should have asked" falls short of the standard required by Pennsylvania law that plaintiff <u>actually agree</u> to arbitrate her claims. In <u>Quiles v. Financial Exchange</u>, 879 A.2d 281 (Pa. Super. 2005), the plaintiff/employee actually signed a form acknowledging that she received the employee handbook, which set forth defendant's arbitration requirement. The form itself mentioned that the company "had provisions related to arbitration." The court credited plaintiff's testimony that, in spite of her signature on

17

the acknowledgment form, she never received a copy of the employee handbook. In that case, although defendant published its arbitration process in employee handbooks and although plaintiff was aware that the company had arbitration provisions, the provisions "ha[d] no binding effect on employee-related actions if that policy [was] never actually communicated to an employee by ensuring that the handbooks [were] distributed to its employees." Quiles, 879 A.2d at 286. Likewise, in the instant case, the By-Laws were, undisputedly, not distributed to plaintiff. Therefore, defendant's motion to compel arbitration is denied.

V.  CONCLUSION

Defendant's motion to dismiss, or in the alternative, to compel arbitration is denied.  The appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ALYSON J. KIRLEIS<br>    Plaintiff, | )<br>)<br>) |
| v. | ) Civil Action No. 06-1495<br>) |
| DICKIE, McCAMEY & CHICOLTE, PC<br>    Defendant. | )<br>) |

O R D E R

Therefore, this 23rd day of July, 2007, IT IS HEREBY ORDERED that Defendant's Motion to Dismiss the Complaints of Plaintiff, and If There Is Jurisdiction, to Compel Arbitration [document #13] is DENIED .

BY THE COURT:

_____, J.

cc:   All Counsel of Record